## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SMARTFLASH, LLC,<br><br>     Plaintiff,<br><br>    v.<br><br>U.S. PATENT AND TRADEMARK OFFICE,<br><br>     Defendant. | Civil Action No. 23-cv-3237 (BAH)<br><br>Judge Beryl A. Howell |

### MEMORANDUM OPINION

Plaintiff, SmartFlash, LLC, submitted a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for emails and communications from defendant, the U.S. Patent & Trade Office ("USPTO"), pertaining to a FOIA request filed by its lawyer three years earlier. Compl., Ex. 1, ECF No. 1-2; *see* Def.'s Statement of Undisputed Material Facts ¶ 3 ("Def.'s SUMF"), ECF No. 24; Pl.'s Response to Def.'s SUMF ¶ 3 ("Pl.'s SUMF"), ECF No. 27-3; Pl.'s Mem. Supp. Cross-Mot. Summ. J. & Opp'n Def.'s Mot. Summ. J. ("Pl.'s Opp'n") at 1, ECF No. 27-1.  In response to the FOIA request at issue in this lawsuit, USPTO produced a series of emails, six with partial redactions claimed as exempt from disclosure under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), the deliberative process privilege.  Compl., Ex. 1 (Pl.'s FOIA Request at Issue), Sub-Ex. 1 ("Responsive Emails"), ECF No. 1-2.  Smartflash contests application of this exemption to these six emails, Pl.'s Opp'n at 1, but for the reasons set out below, the deliberative process privilege protects the redactions at issue, warranting grant of USPTO's motion for summary judgment and denial of Smartflash's cross-motion for summary judgment.

## I.    BACKGROUND

The following facts are uncontested by the parties.  SmartFlash owns a series of patents that were challenged in Covered Business Method proceedings at USPTO, adjudicated by expanded panels of the Patent Trial and Appeal Board ("PTAB").  *See Smartflash, LLC v. USPTO* ("*Smartflash I*"), No. 22-cv-1123 (BAH), 2023 WL 5289287, at *1 (D.D.C. Aug. 17, 2023); Pl.'s Opp'n at 1.  In late 2020, Michael Casey, an attorney for SmartFlash, filed a FOIA request, designated by USPTO as F-21-00071 ("request -71"), in his own name, without identifying himself as filing the request on behalf of his client SmartFlash, seeking records relating to PTAB's use of expanded panels for certain proceedings.  *Id.* at *1, 4; Def.'s SUMF ¶ 7; Pl.'s SUMF ¶ 7.  After USPTO issued an initial response on May 10, 2021, Casey challenged the redactions on administrative appeal, and USPTO's Office of General Law denied his objections on September 7, 2021.  *Id.* at *2.  Additional responsive documents were then uncovered and produced with redactions, on October 5, 2021, and Casey filed another appeal on December 31, 2021, which was largely denied.  *Id.*  Smartflash then filed a lawsuit before this Court, *Smartflash I*, challenging the search and application of exemptions to the request -71 documents.  *Id.*; Def.'s SUMF ¶¶ 3, 7; Pl.'s SUMF ¶¶ 3, 7.  That suit was dismissed in 2023 for lack of standing because Casey, not Smartflash, had filed the FOIA request.  *Smartflash I*, 2023 WL 5289287 at *4; Def.'s SUMF ¶¶ 3, 7; Pl.'s SUMF ¶¶ 3, 7.

Meanwhile, on March 2, 2022, Casey submitted another FOIA request—again, in his own name, without identifying himself as filing the request on behalf of his client SmartFlash— seeking "records relating to the expansion of the [PTAB] for certain proceedings," which are the same records sought in the -71 request, and, as relevant here, "documents showing or referencing: (a) the locations that were searched in response to F-21-00071 and (b) the persons

that were contacted to know where to search in response to F-21-00071," among other items. Def.'s SUMF ¶ 1; Pl.'s SUMF ¶ 1; Def.'s Mot. Summ. J. ("Def.'s MSJ"), Decl. of Caitlin Trujillo, Associate Counsel and FOIA Officer for the Office of General Law of the USPTO ("Trujillo Decl.") ¶ 4, ECF No. 24-1. That request was designated by USPTO as F-22-00081 ("request -81"). Def.'s SUMF ¶ 2; Pl.'s SUMF ¶ 2; Trujillo Decl. ¶ 5. Request -81 is a meta-FOIA request—a FOIA request about a FOIA request—seeking communications and documents related to request -71 (about the expansion of PTAB boards).

The USPTO provided its first appealable response to request -81 on August 30, 2022, but subsequently, on January 18, 2023, reopened request -81 to provide an additional 16 pages of records consisting solely of email exchanges, thereby triggering new appeal rights. Def.'s SUMF ¶¶ 2-3; Pl.'s SUMF ¶¶ 2-3; Trujillo Decl. ¶¶ 9, 14; Def.'s MSJ, Ex. 7, ECF No. 25-1. Some of those pages were redacted pursuant to the deliberative process privilege. *See* Def.'s SUMF ¶ 4; Pl.'s SUMF ¶ 4; Trujillo Decl. ¶ 15. The USPTO FOIA Office's search and application of the deliberative process privilege were, except in two instances, upheld on administrative appeal by the USPTO's Deputy General Counsel for General Law. Def.'s SUMF ¶ 5; Pl.'s SUMF ¶ 5; Trujillo Decl. ¶ 16; Def.'s MSJ, Ex. 9, ECF No. 25-3. The FOIA Office lifted the two redactions and issued a subsequent production. Def.'s SUMF ¶ 6, Pl.'s SUMF ¶ 6; Trujillo Decl. ¶ 17; Def.'s MSJ, Ex. 10, ECF No. 26-4.

On August 30, 2023, Smartflash filed a FOIA request—this time under Smartflash's name, not Casey's—which USPTO designated F-23-00232 ("request -232"). Def.'s MSJ, Ex. 11, ECF No. 25-4; Compl., Ex. 1; Trujillo Decl. ¶ 18. Request -232 asked, in part, for unredacted versions of the same 16 pages of emails that USPTO produced in its second response

to request -81.  Def.'s MSJ, Ex. 11; Trujillo Decl. ¶ 18.[1]  Prior to receiving any response,

Smartflash appealed.  Def.'s MSJ, Ex. 12, ECF No. 25-5.  Subsequently, the FOIA Office denied

request -232's ask for the same 16 pages as "duplicative to your previous FOIA Request,"

request -81, *id.*, Ex. 13 at 1, 3, ECF No. 25-6, and USPTO's Office of General Counsel then

denied the appeal of request -232 "for the reasons explained" in its prior decision regarding

request -81, *id.*, Ex. 9, noting that it was duplicative, *id.*, Ex. 14 at 2, ECF No. 25-7.

On October 30, 2023, Smartflash filed the instant lawsuit challenging USPTO's response

to request -232.  Compl., ECF No. 1; Def.'s SUMF ¶ 9; Pl.'s SUMF ¶ 9.  Pending before the

Court are the parties' cross-motions for summary judgment disputing whether the redactions in

the 16 pages of emails that USPTO produced to its second response to request -81—and

maintained in its response to request -232—are proper invocations of the deliberative process

privilege.[2]

## II.    LEGAL STANDARD

FOIA "requires federal agencies to make records publicly available upon request unless

one of nine exemptions applies."  *Emuwa v. U.S. Dep't of Homeland Sec.*, 113 F.4th 1009, 1012

(D.C. Cir. 2024).  "[W]hile transparency and government accountability are at the heart of

FOIA's mandate," these exemptions "protect important governmental and private interests in

confidentiality."  *Cabezas v. FBI*, 109 F.4th 596, 602 (D.C. Cir. 2024) (quoting *Bartko v. U.S.*

---

[1]    This request, by changing the name of the requestor, ensured that Smartflash would avoid the problem encountered in the prior litigation before this Court.  *Smartflash,I*, 2023 WL 5289287, at *4 (dismissing for lack of standing).

[2]    USPTO argues in support of the adequacy of the search for responsive records, Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mem.") at 4, ECF No. 24, and Smartflash neither responds to this argument nor raises any challenge to the search, *see generally* Pl.'s Opp'n, and thus has waived any challenge to the adequacy of the search. *See Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded.").

*Dep't of Justice*, 898 F.3d 51, 61 (D.C. Cir. 2018)).  To accommodate both of these goals, the

nine exemptions "are to be 'narrowly construed.'"  *Id*. (quoting *Milner v. Dep't of the Navy*, 562

U.S. 562, 565 (2011)).

The agency bears the burden of establishing that a claimed exemption applies.  *Watkins L.*

*& Advoc., PLLC v. U.S. Dep't of Justice*, 78 F.4th 436, 450 (D.C. Cir. 2023).  "In ruling on

summary judgment, courts may rely on non-conclusory agency affidavits demonstrating the basis

for withholding if they are not contradicted by contrary evidence in the record or by evidence of

the agency's bad faith."  *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C.

Cir. 2021); *see also Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013)

(explaining that "[s]ummary judgment may be granted on the basis of agency affidavits if they

contain reasonable specificity of detail rather than merely conclusory statements, and if they are

not called into question by contradictory evidence in the record or by evidence of agency bad

faith" (alteration in original) (quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283,

287 (D.C. Cir. 2006))).  The affidavits may, but need not, take the form of a *Vaughn* index.

*Watkins L. & Advoc.*, 78 F.4th at 451.[3]  The agency's "justification for invoking a FOIA

exemption is sufficient if it appears 'logical' or 'plausible.'"  *Judicial Watch, Inc. v. U.S. Dep't*

*of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (quoting *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612,

619 (D.C. Cir. 2011)).

In evaluating a FOIA challenge, the district court must "verify the validity of each

claimed exemption" based on the *Vaughn* index or affidavits, *Summers v. Department of Justice*,

140 F.3d 1077, 1080 (D.C. Cir. 1988), and ensure that the agency has produced all segregable,

non-exempt information, 5 U.S.C. § 552(b); *Machado Amadis v. Department of State*, 971 F.3d

---

[3]     A *Vaughn* index "describes the documents withheld or redacted and the FOIA exemptions invoked, and
explains why each exemption applies."  *Prison Legal News v. Samuels*, 787 F.3d 1142, 1145 n.1 (D.C. Cir. 2015).

364, 371 (D.C. Cir. 2020). In addition, following a 2016 statutory amendment, *see* FOIA Improvement Act, Pub. L. No. 114-185, § 2, 130 Stat. 538, 539, "[n]ow, even if an exemption applies, the agency may withhold the record only if it 'reasonably foresees that disclosure would harm an interest protected' by the exemption," *Emuwa*, 113 F.4th at 1013 (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)), showing, for instance, "that releasing the specific records sought '"would" chill future internal discussions,'" *id.* (quoting *Machado Amadis*, 971 F.3d at 371). The "vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

## III.    DISCUSSION

USPTO's *Vaughn* index and declarations amply demonstrate that the redacted portions at issue of six emails contained in the 16 pages produced in response to request -81 are predecisional and deliberative and that disclosure would foreseeably cause harm. They were properly withheld under the deliberative process privilege, and since that privilege has not been waived, summary judgment for USPTO is warranted.

### A.    Application of the Deliberative Process Privilege

"[I]ntra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency" are exempt from disclosure under FOIA. 5 U.S.C. § 552(b)(5). "This exemption incorporates privileges available to agencies in civil litigation, including the deliberative-process privilege," which "shields documents 'reflecting advisory opinions, recommendations, and deliberations' that agencies use to make decisions." *Emuwa*, 113 F.4th at 1012-13 (quoting *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021)); *Reps. Comm.*, 3 F.4th at 361. Much like the attorney-client privilege, the deliberative process privilege protects "open and frank discussion" among government officials, *Department of Interior v. Klamath Water Users Protective Association*, 532 U.S. 1, 9 (2001),

ensuring that "'debate and candid consideration of alternatives within an agency' are not subject to public inspection," *Emuwa*, 113 F.4th at 1013 (quoting *Machado Amadis*, 971 F.3d at 371).

The deliberative process "privilege may only be invoked for documents that are both predecisional and deliberative." *Reps. Comm.*, 3 F.4th at 362. "Documents are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position." *Fish & Wildlife Serv.*, 592 U.S. at 268; *see also Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (describing deliberative documents as "reflect[ing] the give-and-take of the consultative process"). "Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position." *Coastal States*, 617 F.2d at 866; *see also Fish & Wildlife Serv.*, 592 U.S. at 268 (describing protected documents as those the agency does not treat as representing "its final view on the matter"). The two prongs have "considerable overlap" "because a document cannot be deliberative unless it is predecisional." *Fish & Wildlife Serv.*, 592 U.S. at 268. Although segregable factual information must be disclosed, *Reporters Committee*, 3 F.4th at 365, factual information that is intertwined with protected communications, *Mead Data Central, Inc. v. U.S. Department of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977), or otherwise of a character such that disclosure "would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency" falls within the privilege, *Quarles v. Department of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990) (quoting *Dudman Communications Corp. v. Department of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987)).

"To carry its burden at summary judgment, the government must demonstrate that (A) the materials at issue are covered by the deliberative process privilege, and (B) it is reasonably foreseeable that release of those materials would cause harm to an interest protected by the privilege." *Reps. Comm.*, 3 F.4th at 361.  USPTO meets that burden here.

### 1.    *Predecisional and Deliberative*

Documents and communications regarding the processing of, and recommendations for responding to, specific FOIA requests have consistently been found to qualify as predecisional and deliberative.  *See, e.g., Machado Amadis,* 971 F.3d at 370-71; *Assassination Archives & Rsch. Ctr. v. CIA*, No. 18-5280, 2020 WL 13120318, at *3 (D.C. Cir. Dec. 21, 2020) (holding that deliberative process privilege exempted from disclosure "redactions on the FOIA forms [which] reflect some predecisional agency give-and-take"); *Whitaker v. U.S. Dep't of State*, No. 14-5275, 2016 WL 9582720, at *1-2 (D.C. Cir. Jan 21, 2016) (upholding invocation of deliberative process privilege to redactions of "responsive records related to the processing of appellant's FOIA request");  *Inst. for Energy Rsch. v. Fed. Energy Regul. Comm'n*, No. 22-cv-3419 (CKK), 2024 WL 3534700, at *5 (D.D.C. July 25, 2024) ("The Court finds that discussions regarding potential FOIA redactions are sufficiently 'deliberative' for the purposes of Exemption 5's deliberative process privilege."); *Nat'l Sec. Couns. v. CIA*, 206 F. Supp. 3d 241, 273-83 (D.D.C. 2016) (holding that FOIA search terms, inter-agency communications, and recommendations regarding responses to FOIA requests fell within the deliberative process privilege).  In *Machado Amadis*, the D.C. Circuit held that the deliberative process privilege exempted from disclosure portions of "Blitz forms"—documents prepared by line attorneys in the Justice Department's Office of Information Policy to identify issues and make recommendations to superiors regarding how to adjudicate FOIA appeals before they are

decided.  971 F.3d at 370-71.  The redacted portions "reflected line attorneys' 'evaluations, recommendations, discussions and analysis," and such "recommendations from subordinates to superiors lie at the core of the deliberative-process privilege." *Id.* at 370; *see also Emuwa*, 113 F.4th at 1015 ("[R]ecommendations from subordinates to supervisors on whether to grant pending asylum applications . . . are a 'classic example' of material protected by the deliberative-process privilege." (quoting *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 899 (D.C. Cir. 2015))).

Similarly, in *National Security Counselors v. CIA*, this Court held that FOIA search terms and communications regarding responses to a FOIA request were protected by the deliberative process privilege.  206 F. Supp. 3d at 273-83.  The agency there described the redacted portions of emails as "providing analysis regarding how another U.S. Government agency plans to process a FOIA request" and "reveal[ing] the processing of a specific and on-going FOIA request."  *Id.* at 282-83.  The portions were written by "officials [who] . . . were in a position to provide recommendations to the ultimate decision-maker regarding how [the agency] should respond to particular FOIA requests."  *Id.* at 282.  These descriptions in the agency's declaration were "more than sufficient" to provide a basis for the deliberative process privilege.  *Id.*  The Court concluded the emails "comprised internal deliberations" and "served to inform the agency's ultimate response" to the FOIA requests and thus were exempt from disclosure.  *Id.* at 282-83.  Likewise, in *Assassination Archives*, the D.C. Circuit upheld withholdings under the deliberative process privilege of portions of five internal FOIA task forms where "the entries in the agency's *Vaughn* index, the declarations, and the context in which they were used ma[d]e . . . sufficiently apparent that the redacted text describe[d] the efforts of staff 'in extracting pertinent material' and any issues they encountered along the way."  2020 WL 13120318, at *2.

Here, Smartflash challenges the redactions in six emails contained in the 16 pages produced in response to request -81.  *See* Responsive Emails at A001-16.[4]  Much like the redacted documents at issue in *Machado Amadis, National Security Counselors*, and *Assassination Archives*, the disputed redactions here are in communications by subordinate employees at the agency discussing how to interpret and respond to a prior FOIA request, i.e., request -71, and its appeal.  These documents and associated redactions are predecisional because all of the emails predate the decisions they discuss, namely, either the initial agency response to request -71 on May 10, 2021, or the decision on appeal on September 7, 2021, *Smartflash I*, 2023 WL 5289287, at *2.  Moreover, these redactions are deliberative because they contain exchanges among non-decisionmakers about their preliminary impressions, analysis, questions, and recommendations.  *See Coastal States*, 617 F.2d at 866; *Emuwa*, 113 F.4th at 1013.

More specifically, five of the emails containing disputed redactions were sent from the FOIA Coordinator Lead for PTAB to his team.  *See* Responsive Emails at A001-02, A003-04, A012, A014, A015.  The redactions contain his "initial impression[s]," "thoughts," questions, and proposals, which is clear from the *Vaughn* index, Def.'s MSJ, *Vaughn* Index at 1-3, 5, ECF No. 24-2, and the unredacted portions of the email text, *see* Responsive Emails at A001, A003-04, A012, A014, A015.  For instance, the redacted portion in one email is preceded by the title "summary of FOIA request and my preliminary thoughts regarding each document request." Responsive Emails at A003.  In another, the redacted portion is preceded by "I haven't yet had a chance to digest this request."  *Id.* at A001.  Such statements indicate that the author is communicating early-stage subjective opinions and providing input to his team—clearly falling

---

[4]    Smartflash refers to the emails by the administrative appeal page numbers, which are also used here.  *See* Responsive Emails.

within the privilege.  *See Coastal States Gas*, 617 F.2d at 866 (describing the privilege as covering "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency").

Further, by the nature of the FOIA Coordinator Lead's authority, none of these communications can be considered the agency's "final view on the matter." *Fish & Wildlife Serv.*, 592 U.S. at 268.  The FOIA Coordinator's role is to gather any responsive records from his business unit, share them with the FOIA Office, and provide input on the sensitivity of those records.  Def.'s Reply Supp. Mot. Summ. J. & Opp'n Pl.'s Cross-Mot. Summ. J. ("Def.'s Opp'n"), Supp'l Decl. of Trujillo ("Trujillo Supp'l Decl.") ¶ 4, ECF No. 30-1.  The FOIA *Officer* alone, however, has the authority to make a final decision.  *Id.*  The Officer may take the Coordinator's "input into consideration," or ignore it, *id.* ¶¶ 4, 10.  *Cf. Machado Amadis*, 971 F.3d at 370 (emphasizing that communications by subordinates to superiors are at the core of the deliberative process privilege).

The remaining sixth email with redactions was sent by a line attorney in the Office of General Law, which adjudicates FOIA appeals in USPTO.  *See* Responsive Emails at A014; Trujillo Supp'l Decl. ¶ 5.  This line attorney was assigned to help with the administrative appeal of request -71.  Trujillo Supp'l Decl. ¶ 5.  The redacted portions consist of her "general questions" to the FOIA Coordinator after first receiving the appeal.  Responsive Emails at A014. As the *Vaughn* index explains, she was "reach[ing] out" to solicit the FOIA Coordinator's views, as part of the internal process of "evaluat[ing] and respond[ing] to FOIA appeals." *Vaughn* Index at 4.  The line attorney's limited authority further emphasizes the deliberative and predecisional nature of her email.  Although the line attorney may provide input and

recommendations on the appeal, the Deputy General Counsel of Law has "exclusive FOIA appeal decision making authority." *Id.* ¶ 5. The line attorney's communications thus cannot constitute final agency policy. *See Fish & Wildlife Serv.*, 592 U.S. at 268.[5]

Smartflash makes several arguments to dispute the application of the privilege to these redactions, but none have merit. First, Smartflash argues that some of the emails are not part of the "deliberative" process because they do not request input, or receive a response, such that there is a "give-and-take." Pl.'s Opp'n at 10 (discussing the email on A001); *id.* at 12-13 (discussing the email on A014). In those circumstances, however, the author is *providing* input "to inform the agency's ultimate response," *National Security Counselors*, 206 F. Supp. 3d at 282, and in any case, the lack of a reply does not dictate the subjective nature of the initial email, *see American Center for Law and Justice v. U.S. Department of Justice*, 325 F. Supp. 3d 162, 174 (D.D.C. 2018) ("[T]he deliberative process privilege should be judged based on the purpose of the document when it was created, not in hindsight.").

Second, Smartflash contends that one of the responsive documents (a spreadsheet) discussed in some of the emails had previously been disclosed in response to a different FOIA request, so a decision had already been made and discussions about that document could not be part of the "give-and-take." Pl.'s Opp'n at 11-12 (referring to the email on A012); *id.* at 8, 12

---

[5]    Plaintiff asserts that the "nature of the decisionmaking authority vested in the office . . . issuing the disputed documents, and the positions in the chain of command of the parties to the documents" is crucial and that because USPTO did not explain the authority of the FOIA Coordinator or line attorney, the agency has failed to establish the deliberative process privilege on that basis alone. Pl.'s Opp'n at 5-6 (quoting *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 101 (D.D.C. 2019)). USPTO subsequently filed a supplemental declaration containing this information, as described above. Trujillo Supp'l Decl. Despite contesting, without caselaw support, the validity of the supplemental declaration as "improper rebuttal evidence," Pl.'s Reply Supp. Cross-Mot. Summ. J. ("Pl.'s Reply") at 1-2, ECF No. 32, Smartflash suffered no prejudice from the timing of the supplemental evidence submission, given its opportunity to respond or rebut the evidence in reply. *See Nat'l Sec. Couns.*, 206 F. Supp. 3d at 267, 276-77 (crediting CIA's supplemental declaration filed after plaintiff objected in its opposition brief to the CIA's original justifications); *cf. Romero v. RBS Constr. Corp.*, No. 18-cv-0179 (EGS), 2022 WL 522989, at *6 (D.D.C. Feb. 22, 2022) (noting that a court cannot rely on supplemental evidence filed with a reply if the other party does not have an opportunity to object or respond).

(discussing the email on A015).  To the contrary, no decision had yet been made with respect to

using the spreadsheet to respond to *this request*, request -71, so any discussions about that

spreadsheet or other responsive documents remain a part of the deliberative process.  Smartflash

assumes without basis—and in contradiction of the *Vaughn* index—that the redacted portions

reiterate a final decision already made.

Third, Smartflash tries to differentiate between "general questions," which it contends are

not covered by the privilege, and recommendations, proposals, and suggestions, which are.  Pl.'s

Opp'n at 13 (referencing email A014).  Questions posed in order to determine how to process the

FOIA request embed subjective views, "help the agency formulate its position," *Fish & Wildlife

Serv.*, 592 U.S. at 268, and "reflect[] the give-and-take of the consultative process," *Coastal

States*, 617 F.2d at 866.  Like recommendations and proposals, they fall within the deliberative

process privilege.

Lastly, Smartflash argues that USPTO did not sufficiently explain how the redacted

portions of all the emails, containing thoughts and impressions, "facilitated agency

deliberations."  Pl.'s Opp'n at 6-7.  USPTO's declarations, however, describe the roles of the

authors of the emails, illustrating how their preliminary thoughts, recommendations, and efforts

to identify responsive documents inform the ultimate decisionmakers on the FOIA response and

appeal.  *See* Trujillo Supp'l Decl. ¶¶ 1, 5; *see also Assassination Archives*, 2020 WL 13120318,

at *2 (upholding as deliberative discussions about materials responsive to a FOIA request).  In

short, USPTO's "justification for invoking" the deliberative process privilege is more than

"plausible."  *Judicial Watch, Inc.*, 715 F.3d at 941 (quoting *ACLU*, 628 F.3d at 619).

2.    *Segregability*

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such a record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). "[N]on-exempt portions of a document," such as facts, "must be disclosed unless they are inextricably intertwined with exempt portions," such as preliminary opinions. *Mead Data Cent.*, 566 F.2d at 260; *see Quarles*, 893 F.2d at 392 (explaining that facts, if segregable from subjective opinions, must be disclosed, except where "disclosure 'would expose an agency's decisionmaking process'" in a harmful way (quoting *Dudman*, 815 F.2d at 1568)). The information is deemed "inextricably intertwined" if, after redacting exempt information, the non-exempt information remaining is meaningless. *See Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 221 (D.D.C. 2005) (holding that "isolated words or phrases" made meaningless by redacting exempt information need not be produced). The Court may rely on "government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated" to make the segregability determination. *Juarez v. Dep't of Justice*, 518 F.3d 54, 61 (D.C. Cir. 2008).

Here, USPTO conducted a "line-by-line review of all responsive material to identify and release information that was either non-exempt or that qualified for discretionary waiver." Trujillo Decl. ¶ 60. This line-by-line approach is apparent from emails where only portions of lines are redacted. *See e.g.*, Responsive Emails at A001, A012. USPTO also "determined that the only information that has been withheld could not be further segregated without disclosing information that warrants protection under the law . . . and would result in reasonably foreseeable harm to the interests protected by this Exemption if released." Trujillo Decl. ¶ 61.

Smartflash argues a redacted section in one email must be produced because the redaction follows the header "summary of FOIA request and my preliminary thoughts," suggesting that the summary contained facts, not opinions, and did not elicit opinion-based responses. Pl.'s Opp'n at 10-11 (referring to the redacted email which is repeated over pages A003-11). As the heading makes clear, though, any facts here are clearly integrated with the author's "thoughts" and are thus not segregable. *See Mead Data Cent.*, 566 F.2d at 260; *see also Mapother v. Dep't of Justice*, 3 F.3d 1533, 1539 (D.C. Cir. 1993) (holding that a summary "assembled through an exercise of judgment in extracting pertinent material . . . for the benefit" of a decisionmaker's exercise of discretion may be protected). USPTO's line-by-line determination also ensures that no meaningful segregable information remains. *See Machado Amadis*, 971 F.3d at 371-72 (holding that the agency's "line-by-line review . . . ensured that the redactions were no broader than necessary").

### 3. *Harm from Disclosure*

"Finding the deliberative process privilege applicable to . . . the withheld materials does not end the matter. Under the FOIA Improvement Act of 2016, the government may not withhold even those privileged materials unless it also 'reasonably foresees that disclosure would harm an interest protected by' the FOIA exemption. 5 U.S.C. § 552(a)(8)(A)(i)(I)." *Reps. Comm.*, 3 F.4th at 369. The agency cannot meet this burden by relying on "mere speculative or abstract fears," *id.* (internal quotation marks and citation omitted), nor "generalized assertions," *Machado Amadis*, 971 F.3d at 371 (internal quotation marks and citation omitted). "[W]hat is needed is a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those

same agency deliberations going forward." *Emuwa*, 113 F.4th at 1015 (quoting *Reps. Comm.*, 3 F.4th at 370).

In *Machado Amadis*, for instance, the agency sufficiently demonstrated harm by explaining in its affidavit that "full disclosure of the Blitz Forms would discourage line attorneys from 'candidly discuss[ing] their ideas, strategies, and recommendations,' thus impairing 'the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals.'" 971 F.3d at 371 (alteration in original). Likewise, in *Emuwa*, the defendant demonstrated harm by focusing on why releasing the withheld portions of the documents at issue would interfere with the agency's ability to "receive candid advice from its line" officers. 113 F.4th at 1015. The declarant there "laid out contextual considerations tending to support the reasonableness of that judgment, including the 'sensitive' nature" of the adjudications. *Id.* at 1015-16. *But see id.* (noting that the Court in *Reporters Committee* "upheld withholding of certain communications," despite only generic rationales in the agency's declarations, "where the foreseeability of harm was 'manifest' from the 'very context and purpose' of the communications" (quoting 3 F.4th at 371-72)). The Court in *Emuwa* emphasized that the "chilling of candid advice" is the "precise harm that the deliberative-process privilege seeks to prevent." *Id.* at 1016 (first passage quoting *Machado Amadis*, 971 F.3d at 371).

USPTO's *Vaughn* index and declarations contain strong justifications for the harm that would be caused by disclosure of the redacted material in each document here. Despite Smartflash's contentions that the *Vaughn* index's explanations are perfunctory and generic, Pl.'s Opp'n at 17-18; Pl.'s Reply Supp. Cross-Mot. Summ. J. ("Pl.'s Reply") at 4-5, ECF No. 32, USPTO has specifically and thoroughly explained the harm that would result from disclosure, including the "chilling effect" that "would seriously diminish USPTO's ability to efficiently

respond to FOIA requests," Trujillo Decl. ¶ 44. "The FOIA Office and business units must be able to discuss how to respond to FOIA requests without fearing that these sensitive internal communications will be released publicly." *Id.* ¶ 41. The relatively small FOIA Office is able swiftly to move through requests only because of the free flow of "impressions, opinions, and recommendations." *Id.* ¶ 44. "Expressions of candid recommendations [also] helps to ensure that PTO's disclosure determinations are correct and legally defensible, which provides a great benefit to the public." *Id.*

These explanations make the requisite "link between the specified harm"—i.e., the negative effect on FOIA requests and FOIA appeals—and "the specific information" withheld—i.e., initial impressions of and back-and-forth discussions about FOIA requests. *Emuwa*, 113 F.4th at 1016 (quoting *Reps. Comm.*, 3 F.4th at 371).[6] Inhibited communication between the FOIA office and business units, and thus slower, less accurate FOIA decisions, is a reasonably foreseeable harm from disclosure here.

### B. Waiver of the Deliberative Process Privilege

Smartflash's final argument challenging the withholdings is that USPTO waived the deliberative process privilege in two ways: (1) by adopting the withheld communications "formally or informally, as the agency position on an issue" or by using these withheld communications "in its dealings with the public," Pl.'s Opp'n at 9; Pl.'s Reply at 2-3, and (2) by making "testimonial use" of the redacted emails in the adversarial setting of the prior litigation between Smartflash and USPTO about the response to request -71, Pl.'s Opp'n at 13-15 (citing

---

[6] Smartflash argues that no actual harm would result from disclosing "impressions" in this case, pointing to unredacted portions of emails that reveal the FOIA Coordinator's initial thoughts about request -71. Pl.'s Opp'n at 17-18 (citing A014, where the FOIA Coordinator wrote "I am not sure exactly what the Requestor is seeking . . ., but I think he fundamentally misunderstands the process by which these panels were expanded."). A more reasonable conclusion, however, is that the agency was judicious in determining *which* impressions would be harmful to reveal and thus redacted only those that would foreseeably cause harm.

*Rockwell International Corp. v. U.S. Department of Justice*, 235 F.3d 598, 606 (D.C. Cir. 2001)).

Although USPTO retains the ultimate burden of persuasion to show proper application of

exemption 5 in order to prevail on summary judgment, Smartflash has the burden of production

to show that waiver applies. *See Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1279 (D.C. Cir.

1992) ("[A] plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing

to specific information in the public domain that appears to duplicate that being withheld."

(quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983))).  Smartflash has not

met that burden here.

Smartflash's first argument invokes two related forms of waiver: waiver based on

adoption and waiver based on public disclosure.  Regarding adoption, "[e]xemption 5 does not

apply 'if an agency chooses *expressly* to adopt or incorporate by reference' a memorandum that

would have otherwise been protected by the privilege." *Elec. Frontier Found. v. U.S. Dep't of*

*Justice*, 739 F.3d 1, 10 (D.C. Cir. 2014) (emphasis in original) (quoting *NLRB v. Sears, Roebuck*

*& Co.*, 421 U.S. 132, 134 (1975)) (specifying that the agency's final decision must adopt the

memorandum's reasoning, not its conclusions alone); *see also Machado Amadis*, 971 F.3d at 370

("[A] recommendation does not lose its predecisional or deliberative character simply because a

final decisionmaker later follows or rejects it without comment.").  Yet, Smartflash provides no

evidence whatsoever that the decisionmaking FOIA Officer expressly adopted any of the emails

or communications into the final decision. *See* Pl.'s Opp'n at 9.

As to public disclosure, under *Fitzgibbon v. CIA*, 911 F.2d 755 (D.C. Cir. 1990), the

deliberative process privilege is only waived if the agency previously released and made public

information that matches and is as specific as the requested information. *Id.* at 765; *see* Def.'s

Mem. in Supp. MSJ ("Def.'s Mem.") at 9-10, ECF No. 24; Def.'s Opp'n at 5-6.  Smartflash has

not indicated, nor tried to argue, that the specific redacted portions of the emails have been previously publicly released in full detail.  At most, Smartflash argues that USPTO's declaration in the prior litigation, *Smartflash I*, referred to the general contours of the information redacted from the emails, such as the FOIA Coordinator asking his colleagues to conduct searches, Pl.'s Opp'n at 13-17, but this falls short of pointing to where USPTO revealed exactly what the FOIA Coordinator said, or the content of the deliberations themselves.

Smartflash's second argument that USPTO has waived the privilege based on testimonial use likewise fails.  Smartflash cites *Rockwell* for the proposition that "where counsel attempts to make a testimonial use of these [notes, documents, and other internal] materials the normal rules of evidence come into play with respect to cross-examination and production of documents." Pl.'s Opp'n at 13 (alteration in original) (quoting *Rockwell*, 235 F.3d at 606).  The *Rockwell* Court acknowledged cases where parties had been forced to disclose privileged work-product documents after affirmatively relying on favorable discussions about or portions of those documents but nevertheless held that a waiver to Exemption 5 did not apply there.  *See id.* at 605-07.  The fundamental inquiry in an exemption 5 case is "'whether the documents would be "routinely" or "normally" disclosed upon a showing of relevance' by a party in litigation with the agency,'" *id.* at 606 (quoting *FTC v. Grolier Inc.*, 462 U.S. 19, 26 (1983)), and even if "particular circumstances" may sometimes make the waiver of the privilege necessary "to protect the adversary system," such documents are not routinely disclosed upon a showing of relevance, *id.*  Here, as in *Rockwell*, no such particular circumstances apply.  Smartflash cannot point to any testimonial use of the redacted portions of the emails in this case whatsoever.

Smartflash instead argues that USPTO previously made "testimonial use" of the redacted contents of the emails because the agency's declarant in *Smartflash I* "testif[ied] as to who

searched, where they searched, what was and was not found," etc., Pl.'s Opp'n at 14, to justify the sufficiency of the search in response to request -71, which was at issue in that litigation.  *See* Pl.'s FOIA Request at Issue, Sub-Ex. 2 (Attachment B, Declaration of Caitlin Trujillo, FOIA Officer ("*Smartflash I* Trujillo Decl.")).  *Rockwell* noted the possibility that "a case might arise in which testimonial use of work-product documents would in effect lead to a general waiver of the privilege—where an agency's use of the documents would mean that virtually *any* plaintiff suing the agency on a related matter would be able to obtain disclosure of those documents." 235 F.3d at 607.  Even so, this is not such a case.  The declarant in *Smartflash I* merely spoke generally about the searches undertaken, noting the dates, people involved, and requests made. *See Smartflash I* Trujillo Decl.  For instance, she states that, on April 7, 2021, the FOIA Coordinator asked his colleagues to search their records for responsive documents.  *Id.* ¶ 22. That request seems to be conveyed in the email contained in A001-02, and Smartflash argues it is contained in the redacted portion.  Pl.'s Opp'n at 14.  The declarant never, however, cited or quoted any of the emails—let alone the redacted portions.  Nor does the declarant indicate that she is even referencing the emails; her statements could be derived from knowledge wholly apart from the emails.  Such general references fall far short of the kind of "testimonial use" contemplated in *Rockwell*.

Importantly, as USPTO argues, *see* Def.'s Opp'n at 5, if such general explanations of the agency's search process could waive the deliberative process privilege over the emails effectuating that process, an agency would be unable to submit a nonconclusory declaration describing its search process while maintaining privilege over its internal communications about responding to a FOIA request.  Smartflash cites no authority holding that the deliberative process privilege in a meta-FOIA case may be eviscerated in such a way.

IV.    **CONCLUSION**

USPTO has demonstrated, through supporting declarations and its *Vaughn* index, that the redacted portions of six emails in the 16 pages of emails produced in response to request -81 (resubmitted as request -232 by Smartflash) are predecisional and deliberative because they contain preliminary discussions about the processing of a pending FOIA request and appeal.  *See Judicial Watch, Inc.*, 726 F.3d at 215; *Reps. Comm.*, 3 F.4th at 362.  USPTO has further established that reasonably foreseeable harm would result from their disclosure.  *See Emuwa*, 113 F.4th at 1015-16.  USPTO's careful line-by-line approach to redactions ensures no further segregable factual information is disclosable.  *See Machado Amadis*, 971 F.3d at 371-72.  Moreover, USPTO has not waived the privilege by making public the redacted contents of those emails, *see Fitzgibbon*, 911 F.2d at 765, by expressly adopting them as its final decision, *see Electronic Frontier Foundation*, 739 F.3d at 10, or by using them as testimony in an adversarial proceeding, *see Rockwell*, 235 F.3d at 604-07.  Summary judgment is therefore granted to USPTO.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  November 20, 2024

_____
**BERYL A. HOWELL**
United States District Judge